

21 Roszel Road
P.O. Box 5226
Princeton, NJ 08543-5226
609.924.0808 *main* | 609.452.1888 *fax*

www.hillwallack.com

July 23, 2019

**VIA ECF**

Honorable Tonianne J. Bongiovanni, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Federal Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608



      Re:    *Sun Pharma Global FZE et al. v. Lupin Limited et al.*,
               <u>Civil Action No. 3:18-cv-2213-FLW-TJB (D.N.J.)</u>

Dear Magistrate Judge Bongiovanni:

We, along with Rakoczy Molino Mazzochi Siwik LLP, represent Defendants ("Lupin") in the above-captioned matter. We write the Court to move to compel Sun to:

(i) serve privilege logs that comport with the Federal Rules; and

(ii) respond to Lupin's Interrogatory No. 24 or alternatively to supplement its production of several categories of documents.

## I.    The Court Should Order Sun to Amend and Supplement Its Privilege Log.

Sun's privilege log is wholly inadequate to allow Lupin to assess its various claims of privilege, and Lupin respectfully requests that the Court order Sun to amend and supplement every privilege log entry identified herein by July 31, 2019. Should the amendments still be inadequate to establish privilege, Lupin moves in advance to compel production of said documents. *See* D.E. 80 (ordering Lupin to submit any motions to compel by July 23, 2019).

### A.    Procedural Posture.

Privilege logs were originally due to be exchanged between the parties on May 24, 2019. On May 22, 2019, Sun requested an extension until May 31, 2019, which Lupin granted; the parties then first exchanged their logs on May 31, 2019. Sun served two logs—a "withheld" log on May 31, 2019 and a "redaction log"—on June 3, 2019.

Lupin raised various issues regarding Sun's privilege logs in its July 3, 2018 letter to the Court (D.E. 69); in a July 10, 2018 meet-and-confer with Sun; in a July 11, 2019 letter to Sun; in a July 16, 2019 letter to Sun; in a July 19, 2019 meet-and confer with Sun; and in a July 22, 2019 meet-and-confer with Sun.



Page 2

One issue that Lupin had raised with Sun was the fact that many entries on Sun's "redaction log" stated that the documents reflected legal advice of *internal* legal counsel. However, the June 27, 2019 Rule 30(b)(6) deposition of ███████████████████████████████████████████████████████████████████████████████████████████████████████████. ██████████████████████████████████████████████████████████████. Lupin asked Sun to edit each erroneous entry, and specifically requested that for each erroneous entry, Sun list the name of the specific external legal counsel that had purportedly rendered the legal advice underlying each redaction. Sun served a revised redaction privilege log on July 15, 2018, but the revisions did not address Lupin's concerns because Sun merely changed every entry that said "internal legal counsel" to "outside counsel." Sun also purported to serve an amended "withheld" log on July 15, 2019, but Lupin has only been able to identify similar changes, i.e. changing "internal legal counsel" to "outside counsel."

Sun's July 15, 2019 "withheld" privilege log is attached as Ex. A, and its July 15, 2019 "redaction" log is attached as Ex. B.

Yesterday, on July 22, 2019, Sun indicated that it *might* be willing to amend its privilege log, and asked Lupin to provide case law authority regarding the same. This offer is too little, too late, particularly in view of the Court's order of Friday, July 19, 2019 in which the Court stated "… given the stage of these proceedings, if a resolution cannot be reached, Lupin is directed to submit a letter application no later than July 23, 2016 with respect to Sun's alleged discovery deficiencies." D.E. 80. As such, Lupin now submits this motion to compel.

**B.   The Court Should Order Sun to Amend and Supplement Its Privilege Logs Because They Are Wholly Inadequate to Allow Lupin to Assess Sun's Claims of Privilege.**

"Privileged documents are exempt from disclosure. ***The party asserting the privilege must establish the essential elements of the privilege***." *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (citations omitted) (emphasis added); *see also Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 534 (N.D. Ill. 2000) ("More often than not, parties proceed in such a manner that would suggest they believe their opponent must undermine their unsupported claims of privilege or that it is the court's task to protect their communications for them. Neither, of course, is the case.").

"To invoke the attorney-client privilege, a party *must demonstrate* that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *Construction*, 73 F.3d at 473 (emphasis added).

> The privilege log should: identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. … Even under this

HILL WALLACK LLP
ATTORNEYS AT LAW

Page 3

> approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.

*Id.*; *see also SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005) ("A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality."); *Am. Health Sys., Inc. v. Liberty Health Sys.*, Civ. A. No. 90–3112, 1991 WL 42310, at *5 (E.D. Pa. Mar. 26, 1991) (attorney-client privilege, or work-product protection, are "not satisfied by mere conclusive or *ipsa dixit* assertions."); FED. R. CIV. P. 26(5)(A) (party withholding information on the grounds of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, **will enable other parties to assess the claim**.") (emphasis added).

Sun's privilege log is wholly inadequate to allow Lupin to assess its claims of privilege for at least the following reasons:

1. **Many of Sun's privilege log entries do not list an attorney as an author, sender, recipient, or cc recipient—*i.e.*, there is no attorney associated with many entries.** *See* Ex. A, .

   - **Indeed, many of Sun's entries do not list *any* individual's name whatsoever.** *See* Ex. A,

This is improper. *See, e.g.*, *SmithKline*, 232 F.R.D. at 477 (E.D. Pa. 2005) ("In a number of its descriptions, however, Plaintiff does not identify any specific attorney with whom a confidential communication was made. Where such information is absent, we find Plaintiff has failed to 'provide sufficient detail to demonstrate fulfillment of the legal requirements for application of the privilege.'"); *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 17 (D.D.C. 2004) (denying privilege where "defendants fail to identify the author ... and in some cases do not even identify the recipient"); *Katiroll Co. v. Kati Roll*, No. 10-3620, 2014 WL 12634921, at *10 (D.N.J. Apr. 8, 2014) ("With respect to State Farm's second revised privilege log served on

---

[1] There are additional entries without an associated name, but Lupin did not list them herein if they were attached to a communication to or from an attorney.

**HILL WALLACK LLP**
ATTORNEYS AT LAW

Page 4

September 30, 2013, the Court agrees with TKRC that this log, which again failed to identify the author, addressee and copy recipients for each document, was clearly insufficient and State Farm should have known better."); *Smithkline*, 193 F.R.D. at 534 (N.D. Ill. 2000) ("Plaintiffs' original log was inadequate, failing in many instances to identify recipients and authors….Accordingly, this court directed the plaintiff to file a privilege log that complied with Fed. R. Civ. P. 26(b)(5), and cases such as *Allendale Mut. Ins. Co. v. Bull Data Systems*, Inc., 145 F.R.D. 84 (N.D.Ill.1992); and *In re General Instrument Corp. Securities Litigation*, 190 F.R.D. 527 (N.D.Ill.2000)."); *Fidelity & Deposit Co. v. McCulloch*, 168 F.R.D. 516, 523 (E.D. Pa. 1996) (additional specificity is required to extend privilege to documents where author was unidentified).

2. **Not a single entry on either Sun's withheld log or redaction log describes the subject matter with particularity; most entries simply list the subject matter as intellectual property or product development**:



This is also improper, and Courts have found privilege insufficiently established even when more information was provided about the documents and subject matter. *See, e.g.*, *Construction*, 73 F.3d at 473-74 ("We have reviewed Respondents' privilege log, and find it deficient. The log contains a cursory description of each document, the date, author, recipient, and 'comments.' Further, under a heading entitled 'Basis of Claim,' each of the documents listed is alleged to be an 'Attorney–Client Communication.' These general allegations of privilege, however, are not supported by the information provided. For example, descriptions and comments for some of the documents listed are as follows: (a) 'Fax Re: DOL Findings' with comment 'cover sheet;' (b) 'Fax: Whistleblower article' with comment 'Self-explanatory;' (c) 'Letter Re: Customer Orders' with comment 'Re: Five Star Products;' (d) 'Summary of Enclosures' with comment 'Self-explanatory;' etc. The descriptions and comments simply do not provide enough information to

support the privilege claim, particularly in the glaring absence of any supporting affidavits or other documentation."); *CSX Transp. Inc. v. Admiral Ins. Co.*, No. 93-132-CIV-J-10, 1995 WL 855421, at *3 (M.D. Fla. July 20, 1995) (privilege log entries inadequate where "[n]early all documents were described as … '[c]onfidential attorney-client communication for the purpose of providing legal advice concerning environmental claims made in connection with Berks Associates, Douglassville, PA site,' or document C006086, which is described as '[c]onfidential attorney work product concerning environmental claims made in connection with Berks Associates, Douglassville, PA site'" and finding that such descriptions "state, but do not establish, that the communication related to information obtained by the attorney for the purpose of providing legal advice"); *Affinion Net Patents, Inc. v. Maritz, Inc.*, Civil Action No. 04-360-JJF, 2006 WL 8452658, at *2 (D. Del. Aug. 23, 2006) ("While many of the descriptions in the revised privilege log have changed, several remain unhelpful, containing only descriptions such as '[e]-mail from outside counsel to client conveying legal advice re patent protection.' Others state only that the communication was 're contractual agreement,' 're financial opportunity,' or 're possible infringer.'") (citations omitted).

3. **Many of Sun's privilege log entries do not even describe the type of document whatsoever (*e.g.*, via use of terms such as "memorandum," or "email"); rather, many entries simply use the phrase "confidential document."** *See* Ex. A, ████████ ████████████████████████████████████ .

In view of the case law cited above, in which privilege log entries were found to be inadequate even where an attempt was made to describe the document and subject matter, simply describing a withheld document as a "confidential document" is *a fortiori* improper. *See also Bowne v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (finding privilege log inadequate where the "log list[ed], for each document, the date, author, addresses, 'other recipients,' ***whether the document was a letter or memorandum or set of notes or other type of document, a very skeletal description of 'subject'*** and an identification of the type of privilege claimed") (emphasis added).

In sum, the fact that Sun's privilege log contains so many entries for which: (i) no attorney is associated; and/or (ii) no author, recipient, or sender is listed; and/or (iii) the subject matter is not described with particularity; and/or (iv) the type of document is not even described with particularity render Sun's privilege logs wholly inadequate to allow Lupin to assess Sun's claims of privilege.

As such Lupin respectfully requests that the Court order Sun to amend every entry listed herein (including every entry on Sun's redaction log) to recite at least: (i) the particular involved attorney; (ii) the applicable authors, senders and recipients; (iii) the particular type of document withheld; (iv) and the particular subject matter by July 31, 2019. Should the amendments be insufficient to establish privilege, Lupin moves in advance to compel production of said documents. *See* D.E. 80 (ordering Lupin to submit any motions to compel by July 23, 2019).

**HILL WALLACK LLP**
ATTORNEYS AT LAW

Page 6

## II. The Court Should Order Sun to Respond to Lupin's Interrogatory No. 24.

Lupin also respectfully moves to compel Sun to provide a substantive response to Lupin's Interrogatory No. 24, so as to provide a full and detailed explanation regarding the specific efforts undertaken to comply with the discovery that has been propounded. Alternatively, Lupin requests that the Court order Sun to supplement its production of several categories of documents.

### A. Procedural Posture.

On May 29, 2019, Lupin served its Third Set of Interrogatories, including Interrogatory No. 24:

> Describe Plaintiffs' procedure for locating and collecting "responsive, non-privileged documents that relate to the development of Bromsite® and/or the Patent-in-Suit" in the above-captioned litigation. *See, e.g.*, Plaintiffs Sun Pharma Global FZE and Sun Pharmaceutical Industries, Inc.'s Responses and Objections to Lupin Limited's and Lupin Pharmaceuticals, Inc.'s First Set of Requests For Production of Documents and Things (Nos. 1-94), dated June 27, 2018, at 28-39 (Response to Request Nos. 24-34).

Lupin's May 29, 2019 Third Set of Interrogatories at Interrogatory No. 24.

On June 28, 2019, Sun (after providing objections), responded as follows:



Sun's June 28, 2019 Responses to Lupin's Third Set of Interrogatories at Interrogatory No. 24.

The reason that Lupin served Interrogatory No. 24 was because Sun's document production is deficient for at least the following reasons:

(i) it contains barely any documents having anything to do with ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (which goes directly to obviousness);

(ii) it is missing many ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as directly relating to the product-at-issue; and

**HILL WALLACK LLP**
ATTORNEYS AT LAW

Page 7

      (iii) it contains barely any documents from another litigation concerning bromfenac (the active ingredient in the product-at-issue) in which Plaintiffs were involved (the "Johnson-Matthey litigation").

Furthermore, Lupin learned during June 2019 depositions that:

      (i) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

      (ii) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and

      (iii) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

And unfortunately, despite many letters and meet-and-confers, Lupin remains confused and in the dark as to the reasons these various documents were not produced, mainly due to the fact that Sun has been both evasive and contradictory in its responses. For example:

**Documents Pertaining to the Selection of Bromfenac.** Sun has produced *no* documents—such as emails, literature searches and/or internal reports—▓▓▓▓▓▓▓▓▓▓▓▓▓ (Such documents go directly to obviousness, Sun's claim of unexpected results, Section 112 issues, and inequitable conduct.) It strains credulity to think that no such documents were created.

This complete lack of documents was not explained by the Rule 30(b)(6) witness on the topic, ▓▓▓▓▓▓▓▓. In fact, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**HILL WALLACK LLP**
ATTORNEYS AT LAW

Page 8



And Sun's counsel also has not been able to provide an explanation.

**Missing Laboratory Notebooks.** Despite the fact that records indicate ▓▓▓▓ ▓▓▓▓ with the patent-at-issue and product-at-issue, Sun has produced ▓▓▓▓. When asked about the missing ▓▓▓▓, Sun initially stated that it had "produced the laboratory notebooks located within Sun's possession, custody, or control that could be located after a reasonable search relating to the issues in this matter." Ex. F, April 23, 2019 Fish letter to Lupin.

However, the inventors' June 2019 deposition testimony indicated that there were likely ▓▓▓▓ ▓▓▓▓ ▓▓▓▓

Furthermore, during the parties' July 10 meet and confer, Lupin identified for Sun not only ▓▓▓▓ ▓▓▓▓ that were missing in Sun's production.

With regard to ▓▓▓▓, Sun first stated that ▓▓▓▓ ▓▓▓▓ ▓▓▓▓, and that the list is in error. Ex. J, July 11, 2019 Boda Letter to Fish. Sun stated that it would "further investigate whether any additional ▓▓▓▓ proportional to the issues of this case exist within the possession, custody, and control of Sun that can be recovered after a reasonable search, including any listed on the two documents identified by Lupin." Ex. K, July 12, 2019 Fish Letter to Lupin.

**HILL WALLACK LLP**
ATTORNEYS AT LAW

Page 9

Then, during the parties' July 22, 2019 meet and confer, Sun stated that it was in the process of collecting and reviewing additional laboratory notebooks, and may have a production of more laboratory notebooks. Sun's counsel ***stated that the new laboratory notebooks are from a location not previously considered or known by the client***; when asked for clarification about the statement regarding this "location," Sun counsel recanted and said the reference to a new location was made in error. Sun's counsel then stated that it was going to manually check certain non-produced laboratory notebooks to confirm that the all the relevant laboratory notebooks were produced.

In sum, Sun's counsel's statements are directly contradicted by two internal documents listing the lab notebooks associated with the product-at-issue in this case. Moreover, Sun counsel's recanted statement regarding new locations is concerning. And it is wholly unclear on how Sun collected laboratory notebooks in the first place, given Sun counsel's representation that they are now being checked manually.

**Johnson-Matthey Litigation.** With regard to the Johnson-Matthey litigation, Sun stated during the July 10, 2019 meet-and-confer that documents regarding this litigation—***which concerned the active ingredient in the product-at-issue in this case***—were not included its production because they documents did not hit on Sun's search terms. Ex. J, July 11, 2019 Boda Letter to Fish. Then, on July 12, 2019, Sun identified Bates numbers for a handful of documents that were produced regarding the Johnson-Matthey litigation. Ex. K, July 12, 2019 Fish Letter to Lupin. Lupin asked Sun to confirm that all documents from the Johnson-Matthey litigation were collected/produced or logged on Sun's privilege log. Ex. L, July 16, 19 Boda Letter to Fish. Sun, however, has refused to make these confirmations, and stated during the parties' July 22 meet and confer that ***non-relevant*** non-privileged documents from the litigation were being withheld, and that anything else was privileged. However, Sun would not say what it deemed "relevant" and did not confirm that the relevant documents were logged on Sun's privilege log. (And the quandary is, of course, exacerbated by the wholly deficient nature of Sun's privilege log, as discussed *supra*.)



**▇▇▇▇ Documents**. Sun designated ▇▇▇▇ as a Rule 30(b)(6) witness on June 4, 2019. On June 12, 2019, Lupin questioned the adequacy of Sun's collection of documents relating to ▇▇▇▇ and specifically pointed out that no ▇▇▇▇ were produced. Ex. M, 6/12/19 email from P. Molino to S. Morrison. Sun confirmed on June 13, 2019 that after "conduct[ing] a reasonable investigation for responsive non-privileged documents," that "▇▇▇▇ ha[d] not been identified in any e-mail or document produced in this case." *Id.*, 6/13/19 email from S. Fish to P. Molino.

However, the day before and the ***day of*** ▇▇▇▇ deposition, Sun produced relevant documents from ▇▇▇▇. These documents should have been identified in Sun's initial search, especially given that some of the documents include the named inventors of the patent-at-issue. Ex. N, June 28, 2019 Boda Letter to Fish.

HILL WALLACK LLP
ATTORNEYS AT LAW

Page 10

### B. The Court Should Order Sun to Respond to Lupin's Interrogatory No. 24, or Alternatively, to Produce the Missing Documents.

As detailed above, there are several outstanding issues with Sun's production of documents that the parties have not been able to resolve, and about which Lupin is still very confused due to the scanty and inconsistent information provide by Sun. Furthermore, as shown above, there is substantial reason to believe that Sun's document production efforts were incomplete and/or inadequate. Lupin's Interrogatory No. 24 is a reasonable way for Lupin to assess the adequacy of Sun's search and collection for documents. *See, e.g.*:

- *Susquehanna Commercial Fin. Inc. v. Vascular Res. Inc.*, No. 09-cv-2012, 2010 WL 4973317, at *5 (M.D. Pa. Dec. 1, 2010) (ordering Plaintiff "to undertake further steps in an effort to locate and identify additional responsive documents" and stating that "if such a further undertaking fails to identify additional responsive material . . . ***we will direct Plaintiff to explain to the Court in greater detail, and under oath, the process Plaintiff used to attempt to locate and identify documents that may be responsive to Defendants' requests***") (emphasis added).

- *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109-110 (E.D. Pa. 2010) (granting in part and denying in part Plaintiffs' motion to compel the production of documents; Plaintiffs sought an order compelling defendant to "confer with Plaintiffs concerning additional relevant custodians and search terms, and what searches Allstate conducted in the past, 'so that Plaintiffs receive all relevant documents concerning the Release'"; the Court stated that it "deems it reasonable to compel the parties to confer and come to some agreement on the search terms that Defendants intend to use, the custodians they intend to search, the date ranges for their new searches, and any other essential details about the search methodology they intend to implement for the production of electronically-stored information concerning the Release." In addition, "***the Court does not find that such information is subject to any work product protection, as it goes to the underlying facts of what documents are responsive to Plaintiffs' document requests and does not delve into the thought processes of Defendants' counsel***.") (emphasis added).

- *Smith v. Life Inv'r Ins. Co.*, No. 07-cv-681, 2009 WL 2045197, at *7 (W.D. Pa. July 9, 2009) (Plaintiff asked Court to compel disclosure of all search terms so that it could fully evaluate the defendant's methodology in searching for and locating responsive documents; Court determined that "Defendant has a burden to demonstrate that its search for documents was reasonable. A thorough explanation of the search terms and procedures used would be a large step in that direction.").

In sum, information relating to the procedure by which a party locates documents for production is not protected by work product protection. Furthermore, as the party who has provided inadequate and incomplete discovery, and as the party who is resisting discovery now, Sun should be compelled to fully explain the process it used to search for and collect such documents for production in this litigation.

**HILL WALLACK LLP**
ATTORNEYS AT LAW

Page 11

                                              Respectfully submitted,

                                              /s/ Eric Abraham
                                              ERIC ABRAHAM